UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JACKSON LEWIS LLP
*ATTORNEYS FOR DEFENDANT*
58 South Service Road, Suite 410
Melville, New York  11747
(631) 247-0404

ATTORNEYS OF RECORD:
    MARC S. WENGER, ESQ.
    DAVID R. EHRLICH, ESQ.

------------------------------------------------------------X
STANLEY MADALONI,

                Plaintiff,                11 CIV 5086 (RMB)(DCF)

                                                          **ANSWER TO**
                v.                          **AMENDED COMPLAINT**
                                                          **WITH COUNTERCLAIMS**

MADA DESIGN, INC.,

                Defendant.
------------------------------------------------------------X

        Defendant Mada Design, Inc. ("Defendant"), by its attorneys, Jackson Lewis LLP, as and for its Answer with Counterclaims to Plaintiff's Amended Complaint filed on September 29, 2011 in the above action (the "Complaint"), states as follows:

        1.    Defendant neither admits nor denies the allegations contained in Paragraph 1 of the Amended Complaint as they call for legal conclusions to which no response is required.

        2.    Defendant denies the allegations contained in Paragraph 2 of the Amended Complaint to the extent that the alleged events did not occur as described, but further states that Defendant does not contest venue.

3. Defendant lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 3 of the Amended Complaint.

4. Defendant lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 4 of the Amended Complaint, except admits that Mada Design, Inc., a New York corporation, is located at 630 Third Avenue, New York, New York 10017 and is engaged in the business of providing design services, and marketing and promotional expertise to its clients.

5. Defendant lacks knowledge and information sufficient to admit or deny the allegations contained in Paragraph 5 of the Amended Complaint, except to the extent such allegations describe documents referred to in Exhibit A of the Amended Complaint, Defendant refers to those documents for a true and complete description of their contents, and denies any allegations contained in Paragraph 5 of the Amended Complaint that are inconsistent with their contents.

6. Defendant admits to the allegations contained in Paragraph 6 of the Amended Complaint, except to the extent such allegations describe the Purchase Agreement referenced in the Complaint ("Purchase Agreement"), Defendant refers to that document for a true and complete description of its terms, and denies any allegations contained in Paragraph 6 of the Amended Complaint that are inconsistent with its terms.

7. Defendant refers to the Purchase Agreement for a true and complete description of its terms, and denies any allegations contained in Paragraph 7 of the Amended Complaint that are inconsistent with its terms.

8. Defendant refers to the Employment Agreement referenced in the Amended Complaint ("Employment Agreement") for a true and complete description of its

terms, and denies any allegations contained in Paragraph 8 of the Amended Complaint that are inconsistent with its terms.

### AS TO THE CLAIM FOR "BREACH OF CONTRACT"

9. Defendant denies the allegations contained in Paragraph 9 of the Amended Complaint, except admits that Stanley Madaloni's employment was terminated on July 15, 2011.

10. Defendant denies the allegations contained in Paragraph 10 of the Amended Complaint, and refers to the Employment Agreement for a true and complete description of its terms, and further denies any allegations contained in Paragraph 10 of the Amended Complaint that are inconsistent with its terms.

11. Defendant refers to the Employment Agreement for a true and complete description of its terms and denies any allegations contained in Paragraph 11 of the Amended Complaint that are inconsistent with its terms.

12. Defendant admits the allegations contained in Paragraph 12 of the Amended Complaint, except refers to the email referenced in the Amended Complaint for a true and complete description of its contents, and denies any allegations contained in Paragraph 12 of the Amended Complaint that are inconsistent with its contents.

13. Defendant denies the allegations contained in Paragraph 13 of the Amended Complaint.

14. Defendant denies the allegations contained in Paragraph 14 of the Amended Complaint.

15. Defendant denies the allegations contained in Paragraph 15 of the Amended Complaint.

16. Defendant refers to the Employment Agreement for a true and complete description of its terms and denies any allegations contained in Paragraph 16 of the Amended Complaint that are inconsistent with its terms.

17. Defendant refers to the Employment Agreement for a true and complete description of its terms and denies any allegations contained in Paragraph 17 of the Amended Complaint that are inconsistent with its terms.

18. Defendant refers to the Employment Agreement for a true and complete description of its terms and denies any allegations contained in Paragraph 18 of the Amended Complaint that are inconsistent with its terms.

### AS TO FOR THE CLAIM FOR "DECLARATORY JUDGMENT"

19. Defendant denies the allegations contained in Paragraph 19 of the Amended Complaint, except admits that pursuant to the Employment Agreement, Plaintiff, as an employee of Defendant, was entitled to a $1,200 monthly car allowance and refers to the Agreement for a complete and accurate statement of its contents.

20. Defendant denies the allegation contained in Paragraph 20 of the Amended Complaint, except Defendants lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations regarding the fee for early termination of a lease.

21. Defendant denies the allegation contained in Paragraph 21 of the Amended Complaint.

### AS TO THE CLAIM FOR "REPLEVIN"

22. Defendant denies the allegation contained in Paragraph 22 of the Amended Complaint.

23. Defendant denies the allegation contained in Paragraph 23 of the Amended Complaint.

## AS TO THE "WHEREFORE CLAUSE"

Defendant denies that Plaintiff is entitled to any relief alleged therein.

## AFFIRMATIVE DEFENSES

Without assuming the burden of proof as to any of the following defenses where the law does not impose such a burden on Defendant, Defendant asserts the following defenses:

### FIRST AFFIRMATIVE DEFENSE

24. The Complaint should be dismissed because it fails to state a claim, in whole or in part, upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

25. Plaintiff's claims are barred by reason of waiver, estoppel and/or laches.

### THIRD AFFIRMATIVE DEFENSE

26. To the extent Plaintiff sustained any damages, such damages were caused in whole or in part by his own conduct.

### FOURTH AFFIRMATIVE DEFENSE

27. Plaintiff's claims are barred by the doctrine of unclean hands.

### FIFTH AFFIRMATIVE DEFENSE

28. Plaintiff breached the agreement on which his relief is based by failing to perform as required under the agreement.

### SIXTH AFFIRMATIVE DEFENSE

29. Plaintiff has received all benefits, monies and compensation to which he was entitled under the agreement.

### SEVENTH AFFIRMATIVE DEFENSE

30. As to the Declaratory Judgment claim, Plaintiff did not have the authority to sign a car lease on behalf of Defendant.

### EIGHTH AFFIRMATIVE DEFENSE

31. As to the Replevin claim, Defendant has returned all items belonging to Plaintiff and has retained only those items which are owned by Defendant.

### DEFENDANT'S COUNTERCLAIMS

32. Defendant is a creative agency which assists clients in building and reinforcing distinctive ideas and brand experiences across all media with a focus on digital and social platforms.

33. Pursuant to a stock purchase agreement, Iverco Inc., d/b/a Madison Park Company purchased all of Defendant's shares from Plaintiff and his wife, Angela Whitford, in July 2007.

34. Andrew Mininger, as sole shareholder of Iverco Inc., became the sole shareholder of Defendant. Mininger was also the Chief Executive Officer and director of Defendant.

35. Defendant entered into an employment agreement with Plaintiff, in which Plaintiff, who operated the company prior to the stock purchase, was required to render exclusive and full-time employment services to Defendant. Plaintiff was required to perform duties as directed by the board of directors or officers of Defendant, and render services and advice as requested by Defendant. Plaintiff's duties included those duties he was previously responsible for, as well as expanding Defendant's operations into other markets and initiating new ventures.

36. Plaintiff agreed to perform and render his services to Defendant with "fidelity and to the best of his ability."

37. The employment agreement was for a five year term, although the parties had an option to terminate such agreement after four years.

38. In or about January 2011, Mininger recognized that Defendant needed to restructure the company by, among other things, limiting expenses.

39. Plaintiff rejected the strategy offered by Mininger and insisted on following his own strategy for Defendant. Mininger deferred to Plaintiff based on Plaintiff's prior experience in operating the business.

40. After a few months, Mininger believed that Plaintiff was working against the interests of Defendant and for his own benefit. Upon information and belief, Plaintiff was orchestrating the destruction of Defendant, with the intention of forming his own competing company, or alternatively, to take over the ownership of Defendant at the expense of the existing shareholder.

41. Plaintiff began to withhold key information from Mininger regarding finances, staff and clients.

42. For example, Plaintiff failed to inform Mininger about the decline in the business Defendant received from one of its most important clients, Topps. Plaintiff also failed to take any action to reinvigorate or otherwise address the loss of business from Topps.

43. Mininger discovered that Plaintiff failed to cash several checks Defendant received from clients and directed the staff not to inform Mininger about the receipt of those checks. Upon information and belief, Plaintiff planned to cash those checks in a separate account not affiliated with Defendant.

44. Mininger discovered that there were no records of the payables owed to vendors, a job function for which Plaintiff and his wife were responsible, and that Plaintiff failed to make payments to vendors, putting Defendant's reputation with its key vendors at risk.

45. When Mininger obtained new clients for Defendant for which funding was needed, Plaintiff resisted the acceptance of this new business and worked to prevent Defendant from being able to perform the services needed to secure those new accounts.

46. Pursuant to the purchase agreement, Plaintiff held a note which was to come due on or about July 15, 2011. Defendant, Plaintiff and the bank which helped Defendant finance the note, reached an agreement to extend the note to allow Defendant to continue to operate. However, after that agreement was reached and shortly before the note was due, Plaintiff backed out of the deal.

47. Upon information and belief, Plaintiff's act of backing out of the deal was designed to bankrupt Defendant.

48. Mininger also discovered that Plaintiff executed documents and agreements with clients for which he had no authority. Upon information and belief, Plaintiff executed such documents and agreements with the intent to damage Defendant.

49. Plaintiff and his wife failed to provide Mininger with the password to Defendant's Quickbooks accounting program, preventing Mininger's ability to investigate Defendant's accounting and Plaintiff's conduct.

50. Plaintiff, who was the systems administrator for Defendant, prevented Mininger from being able to access his e-mail account with Defendant.

51. When Mininger questioned Plaintiff's actions as described in the preceding paragraphs, Plaintiff threatened Mininger that he was going to form his own competing company.

52. Upon information and belief, Plaintiff began forming a company to compete with Defendant while he was employed by Defendant and had over one year remaining in the employment agreement.

53. Mininger discharged Plaintiff on July 15, 2011.

54. Upon information and belief, the foregoing acts by Plaintiff were designed to destroy Defendant and with the intent to form his own competing company, or become the owner of Defendant at the expense of the current shareholder.

## AS AND FOR A FIRST COUNTERCLAIM

### (Breach of Contract)

55. Defendant repeats and realleges each and every allegation made in paragraphs 25 to 54, as if the same were more fully set forth at length herein.

56. Plaintiff and Defendant entered into an employment agreement in which Plaintiff was to perform his duties with fidelity to Defendant and to the best of his abilities.

57. Based on the acts described in the paragraphs above, Plaintiff breached the employment agreement.

58. As a result of Plaintiff's breach of the agreement, Defendant was damaged.

59. Defendant paid Plaintiff his salary and provided him with benefits through July 15, 2011, and through the period he was in breach of the agreement.

60. As a result, Defendant was damaged by having provided compensation to Plaintiff at the same time Plaintiff was in breach of his duties under the employment agreement.

61. Accordingly, based on Plaintiff's breach of the employment agreement, Defendant requests an award for damages for an amount to be determined at trial.

## AS AND FOR A SECOND COUNTERCLAIM AGAINST PLAINTIFF

### (Breach of the Duty of Loyalty)

62. Defendant repeats and realleges each and every allegation made in paragraphs 25 to 61, as if the same were more fully set forth at length herein.

63. Plaintiff, as an employee of Defendant, owed Defendant a duty of good faith and loyalty in performing his duties during his employment with Defendant.

64. As stated above, Plaintiff intentionally performed acts while employed by Defendant which were designed to hurt, damage, and destroy Defendant and its business.

65. Plaintiff's intentional acts designed to hurt, damage, and destroy Defendant, were also designed to allow Plaintiff to form a competing business or to take ownership of Defendant at the expense of Defendant's existing shareholder.

66. Plaintiff used Defendant's time, facilities, confidential and proprietary information, and trade secrets in his attempt to destroy Defendant and form his own competing business or take ownership of Defendant at the expense of the existing shareholder.

67. Plaintiff was a faithless servant to Defendant while employed by Defendant.

68. Plaintiff's aforementioned actions breached the duty of loyalty owed to Defendant by Plaintiff, and caused Defendant damages.

69. Defendant paid Plaintiff his salary through July 15, 2011, the date Plaintiff was discharged.

70. Accordingly, as a result of the foregoing conduct, Defendant is entitled to damages, including, but not limited to, the forfeiture of all compensation, salary, benefits, bonuses, and any other incentive compensation, from Plaintiff's first act of disloyalty to the present.

**WHEREFORE**, Defendant prays that the Court:

a. dismiss the Amended Complaint in its entirety, with prejudice;

b. deny each and every demand and prayer for relief contained in the Amended Complaint;

c. award Defendant relief on its First Counterclaim for an amount to be determined at trial;

d. award Defendant relief on its Second Counterclaim for an amount to be determined at trial; and

e. grant such other and further relief as the Court deems just and proper.

Dated: Melville, New York
October 19, 2011

Respectfully submitted,

JACKSON LEWIS LLP
*Attorneys for Defendant*
58 South Service Road, Suite 410
Melville, New York 11747
(631) 247-0404

By: _____
MARC S. WENGER, ESQ.
DAVID R. EHRLICH, ESQ.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of October, 2011, I caused a true and correct copy of the enclosed **ANSWER TO AMENDED COMPLAINT WITH COUNTERCLAIMS,** to be served upon all parties via Federal Express, and electronically filed with the Clerk of the Court and served in accordance with the Federal Rules of Civil Procedure, the Southern District's Local Rules, and the Southern District's Rules on Electronic Service upon the following parties and participants:

Anthony J. Costantini
*Attorney for Plaintiff*
Duane Morris LLP
1540 Broadway
New York, New York 10036-4086

_____
David R. Ehrlich, Esq.

4844-3775-9499, v. 1